477 So.2d 1240 (1985)
Donald Lavon OWEN, Jr., Plaintiff-Appellant,
v.
Andrea Cronce Owen GALLIEN, Defendant-Appellee.
No. 84-698.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
*1241 Nelson, Hammons & Johnson, John L. Hammons, Shreveport, for plaintiff-appellant.
Martha A. O'Neal, Deridder, for defendant-appellee.
Before GUIDRY, LABORDE and KING, JJ.
GUIDRY, Judge.
This is a child custody case. The father, Donald Lavon Owen, Jr., appeals the judgment of the trial court which dismissed his rule for a change of custody of his two minor children.
Donald Owen and Andrea Cronce were married in DeRidder, Louisiana, on December 28, 1973. Subsequent to their marriage, the couple moved to Virginia where Donald had secured employment with a paper company. Two children were born of this marriage, Christopher Wayne and Aimee LeeAnn. In December of 1980, Andrea moved back to DeRidder with the two children. On January 16, 1981, Andrea obtained a Virginia judgment of divorce from Donald on the ground of adultery. The divorce decree granted custody of Christopher *1242 and Aimee to Andrea and ordered Donald to pay child support in the amount of $150.00 per week. Donald was granted reasonable visitation privileges. Donald returned to Louisiana in April of 1981 and has since resided in Mansfield, approximately 100 miles from DeRidder.
On April 20, 1983, Donald petitioned the district court for Beauregard Parish for a change of custody of his two children. In his petition, Donald prayed for sole custody of the children or, alternatively, joint custody. Andrea reconvened seeking an increase in child support. In her reconventional demand, she also sought to retain sole custody of the two children with a change in Donald's visitation rights, or, in the alternative, to be granted joint custody. Donald answered the reconventional demand requesting child support from Andrea in the event that he was given sole custody of the children or a modification of his child support obligation if an award of joint custody was rendered.
On May 30, 1983, Andrea married Michael Wayne Gallien and moved to Houston, Texas, with Christopher and Aimee. Donald and Andrea thereafter filed a joint motion for change of venue. The case was thereafter transferred and heard by the district court of Vernon Parish.[1]
The custody rule and defendant's reconventional demand were heard on March 1 and 5, 1984. At that time, Donald presented evidence on his case in chief. At the conclusion of this evidence, defendant moved for a directed verdict.[2] Defendant informed the court that if the motion was granted, she would abandon her rights under the reconventional demand. The trial judge thereafter granted the motion dismissing plaintiff's case and ordered that custody of the two children be maintained with their mother, subject to specific visitation privileges granted to plaintiff.
Donald appealed and sets forth the following specifications of error:
1. The trial court erred by utilizing and applying the maternal preference rule;
2. The trial court erred in granting appellee's motion to dismiss;
3. The trial court erred in refusing to allow appellant to put on evidence showing a substantial change in the parties' respective financial circumstances;
4. The trial court erred in allowing appellee to introduce a supplemental affidavit of income and expenses on the morning of trial;
5. The trial court erred in refusing to allow appellant to submit in evidence a letter written by appellee prior to her divorce from appellant; and,
6. The trial court erred in refusing to apply the legislatively mandated joint custody rules.
The most serious specifications of error concern the trial court's grant of appellee's motion for dismissal after appellant rested his case in chief, and the alleged failure of the trial court to genuinely consider an award of joint custody as the preferred custodial award.
The following is a fair summary of the evidence adduced at trial during appellant's case in chief. Andrea Gallien, on cross-examination, testified that she moved back to DeRidder with Christopher and Aimee in December of 1980. She and Donald were divorced the following month. Upon her return to DeRidder, Andrea worked at various jobs before deciding to seek a college degree at McNeese State University in Lake Charles. Andrea attended McNeese from June of 1981 until May of 1983, at which time she received a degree in Computer Science. She commuted from DeRidder to Lake Charles during this time, which was about an hour drive each way. While Andrea attended school, Aimee went to a *1243 day care center and Christopher attended school. Since both their maternal and paternal grandparents lived in DeRidder, the children also spent time with them during the time that Andrea was at school. Andrea worked part time while attending McNeese.
On May 30, 1983, Andrea married Michael Wayne Gallien. The Galliens soon after moved to Houston with Christopher and Aimee, where they now live in a comfortable three bedroom home. Andrea is employed as a computer programmer with Texaco and Mr. Gallien is a school teacher.
Christopher, nine and a half years old at the time of the hearing, testified out of the presence of his parents. Christopher stated that he is happy living in Houston but that he would prefer living in DeRidder because he could hunt and fish there. Christopher stated that he loved his father and Judy (his father's new wife) and would rather live with them than with his mother.
It was also brought out at the hearing that Christopher is a straight A student, participates in recreational activities enjoyed by children of his age and attends church regularly.
Donald Owen moved to Mansfield from Virginia in April of 1981. Donald testified that he moved back to Louisiana in order to be close to his children. He took a significant cut in pay when he left his job in Virginia. He has been employed at International Paper Company since his return to Louisiana and has advanced to the position of Systems Operator A. His superior at International Paper, Dave Turner, testified that Donald is a very dedicated, conscientious and dependable worker. Mr. Turner worked with Donald in Virginia and recommended him for the job in Louisiana once he was informed of Donald's intent to return. Donald remarried on October 10, 1981. His new wife, Judy, also works at International Paper as a program supervisor. Mr. Turner testified that he knew Donald and Judy socially as well as professionally. He described them as being an outstanding young couple and an asset to the community.
Donald works rotating shifts at International Paper. He testified that the children would be kept at a next door neighbor's house until Judy returned home from work at 4:00 p.m. Judy expressed her love for Christopher and Aimee and her desire to have them live with her, Donald and their thirteen month old baby daughter. The Owens live in a four bedroom brick home in Mansfield. Donald testified that he and Christopher hunt and fish together. He also testified that the children cry every time they have to leave Mansfield to return to Houston.
The trial testimony also revealed recriminations by Donald against Andrea and vice versa. Donald claimed that Andrea neglected her children's emotional and physical needs while she was attending McNeese, although there was nothing in the record to substantiate such claims. Donald also claimed that Andrea's and Mr. Gallien's sexual indiscretions were harmful and psychologically damaging to Christopher. He also contended that Andrea refused him and his parents visitation of the children on certain occasions. Andrea, on the other hand, accused Donald of forging her name on several income tax return checks. She also cited incidents where Donald did not have the children properly clothed for the prevailing weather conditions.
Dr. Gerald K. Baker, clinical psychologist and assistant professor of psychiatry and family medicine at L.S.U. Medical School in Shreveport, also testified with regards to several hypothetical questions posed by plaintiff. Dr. Baker admitted that he had never examined Mr. and Mrs. Gallien, Christopher or Aimee, and was thus unable to conclude which living arrangement would be in the children's best interest.
Following the close of appellant's case in chief, appellee moved for a directed verdict. The trial judge considered such motion to be one for dismissal under La.C.C.P. Art. 1672(B) and granted same finding that appellant had not carried his burden of proof.

*1244 JUDGMENT OF DISMISSAL
The best interest of the children is the sole criterion in a change of custody case. La.C.C. Arts. 157A and 146; Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). In determining what is in the best interest of the children, courts must examine all relevant facts. These include, but are not limited to, stability of environment, the standard of living each parent can provide, and the prior history of the children's custody. Further, it is settled that the father and the mother stand on equal footing at the outset of child custody proceedings and the role of the court is to determine the best interest of the children based on the relative fitness and ability of the competing parents in all respects to care for the children. Ferry v. Ferry, 433 So.2d 359 (La. App. 3rd Cir.1983); Thornton v. Thornton, 377 So.2d 417 (La.App. 2d Cir.1979); Bentley v. Bentley, 440 So.2d 1362 (La.App. 3rd Cir.1983). Finally, under our law, joint custody is presumed to be the preferred custodial arrangement.
In light of the above, the children are the real parties at interest in a custody proceeding and the sole issue to be decided is what custodial arrangement will serve their best interest. A determination of this issue can and should not be made until all evidence has been adduced which bears upon the relative fitness and ability of competing parents in all respects to care for the children. Thus, it can be concluded that, because of the unique nature of such proceedings, irrespective of whether an initial award of custody is involved or a change of custody is sought, the competing parties share equally the burden of establishing by a preponderance of the evidence the custodial arrangement which will best serve the interest of the children. Application of the provisions of La.C.C.P. Art. 1672(B) in such proceedings is, in our view, inappropriate because it deprives the trial court of the opportunity to consider the best interest of the children in light of the totality of circumstances of the competing parties. For these reasons and the reasons which follow in our discussion of appellant's sixth assignment of error, we find that the trial court erred in granting a dismissal of this proceeding following the presentation of appellant's case in chief.

JOINT CUSTODY
In his sixth assignment of error, appellant urges that the trial court erred in refusing to apply the legislatively mandated joint custody rules to the facts and circumstances of this case. We agree.
Under Louisiana's joint custody law, La. C.C. Art. 146, the trial court is required to grant custody in accordance with a set order of preference. Before granting sole custody to either of the parents, the court should first consider granting custody to both parents jointly as this arrangement is legislatively presumed to be in the best interest of minor children. In either event, the court's decision should be made according to the children's best interest.
In the instant case, both parties requested joint custody as an alternative to their individual requests for sole custody. The record makes clear that the trial court did not give proper consideration to the alternative requests of both parties for joint custody, which the legislature has determined to be the preferred custodial arrangement.
In his oral reasons for judgment, the trial judge made passing reference to the possibility of joint custody but stated:
"The  our law does provide  Article 146 and 157 of the Civil Code that joint custody is the preferential decree. But as I construe these and perhaps this is incorrect  this is on the initial application, and I did not feel that the amendatory acts take away the responsibility or the burden of him who seeks a change in custody to establish that  by preponderance of the evidence that it would be in the best interest of the children to accomplish that.
And, as pointed out by Counsel in chambers when all of you were there, the distance between the parties  the geographical distance  does not lend itself to the  to that which might ordinarily be *1245 accomplished by implimenting (sic) joint custody."
We are given to understand from the trial court's oral reasons for judgment that no serious consideration was given to appellant's request for joint custody. First, because the trial judge considered that La. C.C. Art. 146 was inapplicable where there had been a previous award of sole custody; secondly, because appellant failed in his burden of establishing that joint custody would be in the best interest of the children; and, thirdly, because the geographical distance between the homes of the competing parties mitigated against such an award. The trial court clearly erred when it failed for the reasons set forth above to give serious consideration to appellant's request for joint custody.
The presumption established by La. C.C. Art. 146 is applicable not only in initial custody awards but as well where a change of custody is sought. Subsection "F" of Article 146 provides that any order for the custody of a minor child of a marriage may be modified at any time to an order of joint custody. Further, La.C.C. Art. 157 provides in part:
"In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146." (Emphasis ours).
As stated by our brethren of the Second Circuit in Carroway v. Carroway, 441 So.2d 494 (La.App.2d Cir.1983):
"Where a change of custody is sought after an original award, permanent custody of the child shall be granted to the parents in accordance with La.C.C. Art. 146. See La.C.C. Art. 157. Article 146 provides that a custody award shall be made according to the best interest of the child, with first preference to awards of joint custody. It is presumed that joint custody is in the best interest of the child unless the parents agree to an award of custody to one parent or proof is submitted to show that such an award would not be in the child's best interest."
The learned trial judge also erred when he concluded that appellant, who sought a change to joint custody, had the burden to establish that joint custody was in the best interest of the children. It was not appellant's burden to establish that joint custody was in the best interest of the children. Rather, if the presumption established by La.C.C. Art. 146 is to be overcome, the burden of rebutting such presumption lies with the party opposing joint custody.
Finally, although the trial court did take into consideration the fact that the distance between the homes of the parties mitigated against an award of joint custody, this factor standing alone is not controlling. La.C.C. Art. 146(C)(2) enumerates various factors, including geographical distance between the homes of the respectives parties, all of which should be considered when deciding whether the joint custody preference has been rebutted.
We are mindful of the fact that a trial court is vested with much discretion in child custody matters. However, where, as in the instant case, a determination of custody has been reached on the basis of less than all of the evidence bearing upon the issue and the legislative mandate of La. C.C. Art. 146 has not been complied with, in the interest of justice, the matter should be remanded for the adducement of additional record evidence and a reconsideration by the trial court of the custody issue.
Considering our decision to remand this matter for further consideration, we deem it unnecessary to consider appellant's other specifications of error.
For the above and foregoing reasons, the judgment of the trial court is reversed and this matter is remanded to the trial court, with leave allowed to both parties to submit such additional evidence as they deem necessary, and for further proceedings consistent with the views expressed in this opinion.
REVERSED AND REMANDED.
NOTES
[1] Although Vernon Parish was not the proper venue for the proceeding by plaintiff to obtain a change of custody (La.C.C.Pr. Art. 74.2), in child custody matters venue is waivable and, by their joint motion, the parties waived any objection to the venue of the district court of Vernon Parish.
[2] Since this was a non-jury trial, the trial court properly treated the motion as one for a dismissal under La.C.C.P. Art. 1672(B).